

Case.net

Search for Cases by: Select Search Method...

Judicial Links | eFiling | Help | Contact Us | Print     GrantedPublicAccess Logoff HSOMMERLAW

## 2022-CC10558 - KIARA LEWIS ET AL V WELLS FARGO BANK N A ET AL (E-CASE)

Case Header | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/ Execution

Click here to eFile on Case
Click here to Respond to Selected Documents

Sort Date Entries: (•) Descending ( ) Ascending     Display Options: All Entries

**01/04/2021** **Jury Trial Scheduled**
**Scheduled For:** 06/21/2021; 9:00 AM ; MICHAEL FRANCIS STELZER; City of St. Louis

**01/02/2021** **Notice of Service**
Affidavit of Service - Wells Fargo Bank, NA.
**Filed By:** CHRISTOPHER ELISHA ROBERTS
**On Behalf Of:** KIARA LEWIS, KIMBERLY LEWIS

**Corporation Served**
Document ID - 20-SMOS-5533; Served To - WELLS FARGO BANK, N.A.; Server - ; Served Date - 30-DEC-20; Served Time - 00:00:00; Service Type - Special Process Server; Reason Description - Served; Service Text - RECEIVED BY CHRISTINA OLUND/ INTAKE COORDINATOR

**12/23/2020** **Summ Issd- Circ Pers Serv O/S**
Document ID: 20-SMOS-5534, for WELLS FARGO HOME MORTGAGE INC.

**Summ Issd- Circ Pers Serv O/S**
Document ID: 20-SMOS-5533, for WELLS FARGO BANK, N.A..

**12/18/2020** **Filing Info Sheet eFiling**
**Filed By:** CHRISTOPHER ELISHA ROBERTS

**Motion Special Process Server**
Motion to Appoint Out-of-State Special Process Server.
**Filed By:** CHRISTOPHER ELISHA ROBERTS
**On Behalf Of:** KIARA LEWIS, KIMBERLY LEWIS

**Pet Filed in Circuit Ct**
Petition.
**Filed By:** CHRISTOPHER ELISHA ROBERTS

**Judge Assigned**

Electronically Filed - City of St. Louis - January 02, 2021 - 02:08 PM

# AFFIDAVIT OF SERVICE

**State of Missouri** **County of Saint Louis** **Circuit Court**

Case Number: 2022-CC10558

Plaintiff:
**Kara Lewis and Kimberly Lewis**

vs.

Defendant:
**Wells Fargo Bank, N.A.**

For:
Christopher Roberts
Butsch Roberts & Associates LLC
231 S. Bemiston Ave
Suite 260
Clayton, MO 63105

Received by Central Point Investigations to be served on **Wells Fargo Bank, N.A., 2345 Rice Street, Suite 230, Roseville, MN 55113**.

I, Timothy Brown, being duly sworn, depose and say that on the **30th day of December, 2020** at **11:11 am, I:**

served a **CORPORATION** by delivering a true copy of the **Summons and Petition** with the date and hour of service endorsed thereon by me, to: **Christina O'Lund Wells Fargo Bank, N.A.** as **Intake Coordinator** for **Wells Fargo Bank, N.A.**, at the address of: **2345 Rice Street, Suite 230, Roseville, MN 55113**, and informed said person of the contents therein, in compliance with state statutes.

**I declare under penalty of perjury that everything I have stated in this document is true and correct. Minn. Stat. § 358.116.**

[signature] 12-31-20

**Timothy Brown**
Process Server

**Central Point Investigations**
**2515 White Bear Ave. A8 - 120**
**Saint Paul, MN 55109**
**(651) 357-5555**

Our Job Serial Number: CNL-2020000523
Ref: Wells Fargo

Subscribed and Sworn to before me on the 31 day of December, 2020 by the affiant who is personally known to me.

[signature: Tina Blunt]
NOTARY PUBLIC

TINA M BLUNT
Notary Public
State of Minnesota
My Commission Expires
January 31, 2024

Copyright © 1992-2020 Database Services, Inc. - Process Server's Toolbox V8.1z



# IN THE 22ND JUDICIAL CIRCUIT, CITY OF ST LOUIS, MISSOURI

| | | |
|---|---|---|
| Judge or Division:<br>REX M BURLISON | **Case Number: 2022-CC10558** | Special Process Server 1<br>T. BROWN |
| Plaintiff/Petitioner:<br>KIARA LEWIS<br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>CHRISTOPHER ELISHA ROBERTS<br>231 SOUTH BEMISTON AVE<br>STE 260<br>BUTSCH FIELDS & ASSOCIATES LLC<br>CLAYTON, MO 63105 | Special Process Server 2<br><br>Special Process Server 3 |
| Defendant/Respondent:<br>WELLS FARGO BANK, N.A.<br>Nature of Suit:<br>CC Other Tort | Court Address:<br>CIVIL COURTS BUILDING<br>10 N TUCKER BLVD<br>SAINT LOUIS, MO 63101 | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
**(Except Attachment Action)**

**The State of Missouri to:** **WELLS FARGO HOME MORTGAGE INC**
**Alias:**

**2345 RICE STREET**
**SUITE 230**
**ROSEVILLE, MN 55113**

**SPECIAL PROCESS SERVER**

*COURT SEAL OF*
CIRCUIT COURT OF MISSOURI
*CITY OF ST LOUIS*

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the plaintiff/petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

**December 23, 2020** _____ Date

Thomas Kloeppinger _____ Clerk

Further Information:

### Officer's or Server's Affidavit of Service

I certify that:

1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is ____________ of ____________ County, ____________ (state).
3. I have served the above summons by: (check one)
   - ☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.
   - ☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with ____________, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.
   - ☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to ____________ (name) ____________ (title).
   - ☐ other: ____________.

Served at ____________ (address)

in ____________ County, ____________ (state), on ____________ (date) at ____________ (time).

____________ Printed Name of Sheriff or Server

____________ Signature of Sheriff or Server

**Subscribed and sworn to** before me this ________ (day) ________ (month) ________ (year).

I am: (check one)
- ☐ the clerk of the court of which affiant is an officer.
- ☐ the judge of the court of which affiant is an officer.
- ☐ authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
- ☐ authorized to administer oaths. (use for court-appointed server)

*(Seal)*

____________ Signature and Title

**Service Fees**

| | |
|---|---|
| Summons | $________________ |
| Non Est | $________________ |
| Mileage | $________________ (____________ miles @ $ ______ per mile) |
| **Total** | **$**________________ |

**See the following page for directions to officer making return on service of summons.**

## Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion must be served on each defendant/respondent. If any defendant/respondent refuses to receive the copy of the summons and motion when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and motion and the defendant's/respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion to the individual personally or by leaving a copy of the summons and motion at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age who permanently resides with the defendant/respondent, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the defendant/respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States. If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must be made less than 10 days nor more than 30 days from the date the defendant/respondent is to appear in court. The return should be made promptly, and in any event so that it will reach the Missouri court within 30 days after service.



# IN THE 22ND JUDICIAL CIRCUIT, CITY OF ST LOUIS, MISSOURI

| Judge or Division:<br>REX M BURLISON | **Case Number: 2022-CC10558** | Special Process Server 1<br>T. BROWN |
|---|---|---|
| Plaintiff/Petitioner:<br>KIARA LEWIS<br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>CHRISTOPHER ELISHA ROBERTS<br>231 SOUTH BEMISTON AVE<br>STE 260<br>BUTSCH FIELDS & ASSOCIATES LLC<br>CLAYTON, MO 63105 | Special Process Server 2<br><br>Special Process Server 3 |
| Defendant/Respondent:<br>WELLS FARGO BANK, N.A. | Court Address:<br>CIVIL COURTS BUILDING<br>10 N TUCKER BLVD<br>SAINT LOUIS, MO 63101 | (Date File Stamp) |
| Nature of Suit:<br>CC Other Tort | | |

## Summons for Personal Service Outside the State of Missouri
**(Except Attachment Action)**

**The State of Missouri to:** **WELLS FARGO BANK, N.A.**
**Alias:**

**2345 RICE STREET**
**SUITE 230**
**ROSEVILLE, MN 55113**

**SPECIAL PROCESS SERVER**

*COURT SEAL OF* CIRCUIT COURT OF MISSOURI *CITY OF ST LOUIS*

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the plaintiff/petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

**December 23, 2020** Thomas Kloeppinger

Date Clerk

Further Information:

### Officer's or Server's Affidavit of Service

I certify that:

1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is ____________ of ____________ County, ____________ (state).
3. I have served the above summons by: (check one)
   - ☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.
   - ☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with ____________, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.
   - ☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to ____________ (name) ____________ (title).
   - ☐ other: ____________

Served at ____________ (address)

in ____________ County, ____________ (state), on ____________ (date) at ____________ (time).

____________ Printed Name of Sheriff or Server ____________ Signature of Sheriff or Server

**Subscribed and sworn to** before me this ____________ (day) ____________ (month) ____________ (year).

I am: (check one)
- ☐ the clerk of the court of which affiant is an officer.
- ☐ the judge of the court of which affiant is an officer.
- ☐ authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
- ☐ authorized to administer oaths. (use for court-appointed server)

*(Seal)*

____________ Signature and Title

**Service Fees**

| | |
|---|---|
| Summons | $____________________ |
| Non Est | $____________________ |
| Mileage | $____________________ (_______________miles @ $ _______ per mile) |
| **Total** | **$**____________________ |

**See the following page for directions to officer making return on service of summons.**

## Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion must be served on each defendant/respondent. If any defendant/respondent refuses to receive the copy of the summons and motion when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and motion and the defendant's/respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion to the individual personally or by leaving a copy of the summons and motion at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age who permanently resides with the defendant/respondent, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the defendant/respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States. If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must be made less than 10 days nor more than 30 days from the date the defendant/respondent is to appear in court. The return should be made promptly, and in any event so that it will reach the Missouri court within 30 days after service.

Electronically Filed - City of St. Louis - December 18, 2020 - 11:04 AM

**IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS**
**STATE OF MISSOURI**

KIARA LEWIS and KIMBERLY LEWIS, )
)
Plaintiffs, )
)
v. )
) Case No:
WELLS FARGO BANK, N.A., )
)
and )
)
WELLS FARGO HOME MORTGAGE, )
INC., )
)
Defendants. )

**MOTION TO APPOINT OUT-OF-STATE SPECIAL PROCESS SERVER**

Kiara Lewis and Kimberly Lewis, through their undersigned counsel, request that this Court enter an order appointing Tim Brown with Central Point Investigations, 2515, 120 White Bear Avenue A8, St. Paul, Minnesota, phone number 651-357-5555, as a special process server in the above-captioned matter for the purpose of serving a Summons and Petition on Defendant Wells Fargo Bank, N.A. at 2345 Rice Street, Suite 230, Roseville, Minnesota 55113 and serving a Summons and Petition on Defendant Wells Fargo Home Mortgage, Inc. at 2345 Rice Street, Suite 230, Roseville, Minnesota 55113.

Electronically Filed - City of St. Louis - December 18, 2020 - 11:04 AM

**BUTSCH ROBERTS & ASSOCIATES LLC**

By: /s/ Christopher E. Roberts
David T. Butsch #37539
Christopher E. Roberts #61895
231 South Bemiston Ave., Suite 260
Clayton, MO 63105
(314) 863-5700 (telephone)
(314) 863-5711 (fax)
butsch@butschroberts.com
roberts@butschroberts.com

Attorney for Plaintiff

2022-CC10558
Electronically Filed - City of St. Louis - December 18, 2020 - 11:04 AM

**IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| KIARA LEWIS and KIMBERLY LEWIS,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Serve registered agent at:<br>2345 Rice Street, Suite 230<br>Roseville, Minnesota 55113<br><br>and<br><br>WELLS FARGO HOME MORTGAGE, INC.,<br><br>Serve registered agent at:<br>2345 Rice Street, Suite 230<br>Roseville, Minnesota 55113<br><br>Defendants. | ) | Case No:<br><br>**Jury Trial Demanded** |

**PETITION**

COME NOW Plaintiffs Kiara Lewis and Kimberly Lewis (collectively "the Lewises"), by their undersigned counsel and for their Petition against Defendant Wells Fargo, N.A. and Wells Fargo Home Mortgage, Inc. (collectively "Wells Fargo"), state:

**INTRODUCTION**

1. This case is about requiring large mortgage servicers like Wells Fargo to follow very simple rules. Following these simple rules protects individual consumers like the Lewises from significant financial harm and the risk of losing their home. Wells Fargo broke two simple rules and caused significant harm to the Lewises.

Electronically Filed - City of St. Louis - December 18, 2020 - 11:04 AM

2. First, Wells Fargo failed to use the money in the Lewises' mortgage escrow account to pay the Lewises annual real estate taxes. Wells Fargo, as a mortgage servicer, is required to pay the annual real estate taxes on its customer's property with the money its customers deposit into an established escrow account. Customers like the Lewises make monthly mortgage payments to Wells Fargo, a portion of which is held in the escrow account.

3. Second, Wells Fargo failed to properly monitor the Lewises' escrow account to ensure the escrow funds were expended for payment of real estate taxes. To ensure a customer's escrow funds are being properly used to pay taxes (and other items), Wells Fargo is required to monitor the amounts remaining in the escrow account after a given year. For example, if a customer's escrow balance is too large, it signals to Wells Fargo that the escrow funds may not have been used to pay taxes, thereby giving Wells Fargo the opportunity to correct the problem.

4. Unfortunately for the Lewises, because Wells Fargo failed to follow these basic rules, the Lewises almost lost their home to a tax sale and incurred thousands of dollars in out-of-pocket expenses.

5. Wells Fargo has never made real estate tax payments from money collected from the Lewises and held in escrow for the purpose. Since obtaining their home mortgage from Wells Fargo in 2017, the Lewises made timely monthly payments into a Wells Fargo escrow account. The primary purpose of Wells Fargo's escrow account is to collect funds to pay real estate taxes.

6. The Lewises learned that Wells Fargo failed to follow these basic requirements when the Lewises attempted to refinance their mortgage with Wells Fargo.

7. As interest rates were low, the Lewises applied to Wells Fargo to refinance their existing Wells Fargo mortgage. Wells Fargo denied the Lewises' application because the Lewises' property had delinquent real estate taxes - taxes Wells Fargo did not pay. When the Lewises told

Electronically Filed - City of St. Louis - December 18, 2020 - 11:04 AM

Wells Fargo that it was responsible for paying those taxes, Wells Fargo represented that it was not paying real estate taxes on behalf of the Lewises because it objected to them.

8. Because of Wells Fargo's ineptitude, the Lewises were left with no option but to pay the real estate taxes, interest, penalties, and costs out of pocket.

9. Based on Wells Fargo's failure to pay Plaintiffs' real estate taxes, the Lewises are entitled to damages.

**PARTIES**

10. At all times material to this Petition Plaintiff Kiara Lewis ("Lewis") resided in the City of St. Louis, Missouri.

11. Plaintiff Kimberly Lewis ("Kimberly Lewis") lives in Honolulu, Hawaii.

12. Defendant Wells Fargo Bank, N.A. is a National Bank with a principal place of business in South Dakota. Wells Fargo Bank, N.A. is the lending institution for the Lewises' mortgage.

13. Defendant Wells Fargo Home Mortgage, Inc. is a subsidiary of Wells Fargo Bank, N.A. with a principal place of business in Iowa. Wells Fargo Home Mortgage, Inc.'s name appears on the mortgage statements. On information and belief, the Wells Fargo entities worked in conjunction in their handling of the Lewises' account.

**JURISDICTION AND VENUE**

14. This Court has concurrent jurisdiction over this matter under Missouri law and 12 U.S.C. § 2614 of the Real Estate Settlement Procedures Act ("RESPA").

15. Venue is proper in this Court because the acts at issue occurred in the City of St. Louis, and Wells Fargo conducted business in the City of St. Louis.

Electronically Filed - City of St. Louis - December 18, 2020 - 11:04 AM

## FACTS

16. On or about April 24, 2017, the Lewises purchased a home located at 2 N. Boyle Avenue, Unit 4, St. Louis, MO 63108 ("home or Property").

17. Lewis has continually resided at the Property and it is her homestead and residential real estate as contemplated by 12 C.F.R. 1024.2.

18. To purchase the home, the Lewises executed and delivered a promissory note to Wells Fargo. In exchange for Wells Fargo providing the purchase money, the Lewises granted Wells Fargo a mortgage lien on the property.

19. The mortgage identifies Wells Fargo as the mortgagee and lender.

20. The mortgage is a federally-related loan.

21. The mortgage required the Lewises to pay a portion of their monthly payment into an escrow account held by Wells Fargo so that Wells Fargo would disburse the monies to pay for "Escrow Items." The "Escrow Items" included taxes and assessments against the property.

22. The mortgage also required Wells Fargo to apply the monies deposited into escrow to pay the "Escrow Items" no later than the time specified under RESPA.

23. The Lewises made an initial deposit of $884.10 into the escrow account when the loan originated.

24. The Lewises subsequently made monthly mortgage payments of $1,065.45 to Wells Fargo.

25. $367.49 of the Lewises' monthly mortgage payments were deposited by Wells Fargo into an escrow account to pay for the Lewises' real estate taxes and hazard insurance premiums.

Electronically Filed - City of St. Louis - December 18, 2020 - 11:04 AM

26. The Lewises also paid Wells Fargo $172.19 a month for mortgage insurance premiums.

27. The amount Wells Fargo collected as escrow payments changed each year to adjust for increases in real estate tax assessments and hazard insurance premiums.

28. As of the date of this Petition, the Lewises have made all required payments, including all escrow payments.

29. At no time during the life of the mortgage have the Lewises been delinquent on their payments for 30 days or more.

30. While Wells Fargo paid hazard insurance premiums, it failed to make any real estate tax payments for the Lewises' property.

31. In 2020, the Lewises approached Wells Fargo to refinance their mortgage.

32. While Wells Fargo failed to make any of the required real estate tax payments on the Lewises' home, Wells Fargo informed the Lewises that it could not refinance the mortgage because their real estate tax payments were delinquent.

33. Wells Fargo's statement that the Lewises were delinquent in paying real estate taxes was a shock to the Lewises as Wells Fargo was required to pay the real estate taxes with the amounts the Lewises had paid into escrow.

34. While Wells Fargo was required to pay approximately $1,800 a year in real estate tax payments, and it collected the necessary funds from the Lewises to pay the taxes, Wells Fargo failed to make a single real estate tax payment.

35. Moreover, for each successive year, Wells Fargo's escrow analysis assumed that the Lewises would directly pay the previous years' unpaid real estate taxes.

Electronically Filed - City of St. Louis - December 18, 2020 - 11:04 AM

36. For instance, the March 10, 2020, Escrow Review Statement demonstrates this fallacy.

37. The March 10, 2020, Escrow Review Statement is an "annual escrow account statement" sent pursuant to 12 C.F.R. § 1024.17(i).

38. The Escrow Review Statement contains a calculation of the amount expected to be paid from escrow for the next escrow fiscal year, which was the period starting May 2020 through April 2021.

39. The Escrow Review Statement states, "For the past review period, the amount of your escrow items was $1,721.90. For the coming year, we expect the amount paid from escrow to be $4,502.88."

40. That statement should have put Wells Fargo on notice that Wells Fargo was not properly applying the funds in the Lewises' escrow account because the expected amount to be paid from escrow was more than two-and-a-half times the amount of the previous year's escrow items.

41. While escrow accounts increase each year, the increases are typically nominal to account for real estate tax payments and hazard insurance increases.

42. By seeking to collect almost three times as much in future escrow payments than in the previous escrow period, Wells Fargo knew or should have known that its prior escrow disbursements or escrow budgeting were erroneous.

43. The Escrow Review Statement shows that Wells Fargo did not pay any real estate taxes for the looking-back and looking-forward period reflected in the escrow statement: May 2018 through April 2019 and May 2019 through March 2020.

Electronically Filed - City of St. Louis - December 18, 2020 - 11:04 AM

44. The Escrow Review Statement also shows that Wells Fargo budgeted to make a real estate tax payment of $1,860.60 to The City of St. Louis in December 2019, but never made the payment.

45. Finally, the Escrow Review Statement shows the current balance of the escrow account is $6,294.90.

46. The Escrow Review Statement also showed, going forward, Wells Fargo estimated that it would make three tax payments in March 2020 of $1,860.60.

47. These amounts represent the equivalent of three years' worth of tax payments.

48. Despite its representations that it was going to make the equivalent of three years' worth of tax payments in 2020, Wells Fargo never made any real estate tax payments in 2020.

49. Finally, while there was a large surplus in the escrow account, Wells Fargo represented that the Lewises' escrow account would suffer a shortage of $105.02.

50. All of these errors discussed above should have put Wells Fargo on notice of its erroneous handling of the escrow account.

51. Upon a cursory review of the escrow account, Wells Fargo should have discovered that it was not paying the real estate taxes.

52. 12 C.F.R. § 1024.17(i) creates a mechanism by which a mortgage servicer like Wells Fargo reviews a borrower's escrow statement on a regular basis.

53. Wells Fargo failed to undertake any reasonable effort to review the Lewises' escrow statement.

54. Upon discovering they had delinquent real estate taxes because of Wells Fargo's failure to pay such taxes, the Lewises also determined there was a large surplus in the escrow account.

Electronically Filed - City of St. Louis - December 18, 2020 - 11:04 AM

55. Lewis asked Wells Fargo why they had not used the money held in escrow to pay her real estate taxes.

56. A Wells Fargo representative informed Lewis that Wells Fargo did not pay the real estate taxes because they were contesting the amount of real estate taxes with the City of St. Louis. Wells Fargo's representation was false.

57. The Lewises were shocked by Wells Fargo's representation that it was contesting their real estate taxes and by Wells Fargo's failure to pay the required taxes.

58. A representative of the City of St. Louis informed Lewis that Wells Fargo's representation was false as Wells Fargo had not contested any of the assessed real estate taxes.

59. Moreover, Wells Fargo has no standing to object to real estate tax. Standing to contest assessed real estate taxes lies solely with the homeowner.

60. As the assessed real estate taxes had not been paid for many years, the City of St. Louis filed suit against the Lewises to collect the taxes and to eventually sell the property in a tax sale.

61. To avoid further delay of paying the taxes, additional penalties and fees, and losing the property in a tax sale, Lewis paid the outstanding taxes directly to St. Louis City in the amount of $8,799.83. The Lewises were afraid of losing their home. This payment included the following costs:

Court Costs $45.10
Redemption Fee $1.50
Coll. Notice $65.00
Attorney's Fees $367.37

Total: $478.97

62. The payment included the following related to the delinquent 2017 taxes:

Tax $1,975.87

Electronically Filed - City of St. Louis - December 18, 2020 - 11:04 AM

Interest $1,066.97
Penalty $39.52
Recording Fee $0.25

Total: $3,082.61

63. The payment included the following related to the delinquent 2018 taxes:

Tax $2,008.79
Interest $723.16
Penalty $40.18
Recording Fee $0.25

Total: $2,772.38

64. The payment included the following related to the delinquent 2019 taxes:

Tax $2,054.69
Interest $369.84
Penalty $41.09
Recording Fee $0.25

Total: $2,465.87

65. As of the date of this Petition, the Lewises have not received reimbursement from the escrow surplus for the amounts Lewis paid out-of-pocket.

66. Also, as of the date of this Petition, the Lewises have not received reimbursement from Wells Fargo for costs, interest or penalties incurred and paid by Lewis out-of-pocket due to Wells Fargo's failure to timely pay her real estate taxes.

67. The Lewises problem is not unique. Several publicly available databases compile consumer complaints concerning mortgage companies.

68. For example, the website ConsumerAffairs.com lists multiple complaints against Wells Fargo by borrowers who have experienced the same problem as the Lewises.

69. On that website, one borrower writes:

> The bank did not pay my homeowners insurance out of escrow. Now I get a notice that my escrow account has a shortage.

Electronically Filed - City of St. Louis - December 18, 2020 - 11:04 AM

70. Another borrower writes:

> Wells Fargo failed to pay my homeowners insurance from my escrow accounts with them and as a result my insurance has been cancelled.

71. Another borrower writes:

> I have my real estate taxes and homeowner[']s insurance put in an escrow account…in 2018 I received a cancellation notice from my homeowner[']s insurance company. [T]hey said Wells Fargo didn't send the payment.

72. Another borrower on the Better Business Bureau website (bbb.org) writes:

> The company cannot properly figure out escrows or is unwilling/unable to allocate mortgage payments in the way provided by the note and mortgage.

73. Another borrower on the Consumer Financial Protection Bureau website, ConsumerFinance.gov, writes:

> The bank refused to pay my insurance as presented from escrow.

74. Another borrower writes:

> They are consistently mismanaging my escrow account…my escrow account was always short.

75. Another borrower writes:

> Every year I have to fight with Wells Fargo to pay the homeowners insurance and property taxes in a timely manner from the escrow account… Despite my already having paid Wells Fargo the full amount of the homeowner's insurance premium which Wells Fargo holds in the escrow account, today I had to pay the insurance company the full amount myself because Wells Fargo has still not paid it!

76. Another borrower writes:

> It appears the property taxes on my property have not been paid… I have been paying my property tax escrows as part of monthly mortgage payment without missing a single payment.

Electronically Filed - City of St. Louis - December 18, 2020 - 11:04 AM

77. Another borrower writes:

> A claim was filed on my property for unpaid taxes… [I] found that Wells Fargo has not paid my local taxes. I had to beg to get my taxes paid and make 11 phone calls just to get my taxes paid.

78. Another borrower writes:

> Wells Fargo has failed to pay two property tax bills they received from the…County Tax Claim Bureau…and my property taxes during the discount period. I received a delinquent tax bill for taxes Wells Fargo failed to pay (as required from escrow). Wells Fargo has put me at risk of losing my home for unpaid property taxes.

79. Another borrower writes:

> My Mortgage (with my escrow account) was sold to Wells Fargo 8 months ago and they have been mismanaging it ever since. Wells Fargo didn't pay my property tax on time, incurring a {$45.00} late fee that came out of my escrow account.

80. Another borrower writes:

> Wells Fargo Home Mortgage escrow did not pay our … property tax payment on time. They did not make payment until they were delinquent. This resulted in a loss of income tax savings.

81. Another borrower writes:

> I have an escrow account with Wells Fargo where monthly payments include funds for property taxes. I received an Execution Notice from the County Office for delinquent taxes, penalties, fees and costs ($3000.00) threatening tax sale if this amount was not paid, claiming my property tax had not been paid. Following multiple attempts to get Wells Fargo to resolve this and explain, I went to the County Treasurers office and they confirmed that my property taxes were never paid.

82. Another borrower writes:

> Wells Fargo used my escrow account to pay my neighbor's property taxes for 2017. Once I discovered that my property taxes were not being paid, months were spent trying to get an answer from Wells Fargo. After discovering and informing Wells Fargo that they were paying my neighbors taxes with my money no progress was made unless I called in weekly. I was not reimbursed the full amount I overpaid.

Electronically Filed - City of St. Louis - December 18, 2020 - 11:04 AM

83. Another borrower writes:

> I have an escrow account on my mortgage and requested my property tax to be paid before [redacted date]. Wells Fargo agreed and sent the payment late. I paid the amount of [$5300.00] since the payment was not received in timely manner.

84. Another borrower writes:

> I bought a home, and my mortgage was sold to Wells Fargo. For yeas they weren't paying the county taxes out of my escrow. When I informed them that the property taxes weren't being paid, they paid them out of what we had saved in escrow and left us with a shortage.

85. Another borrower writes:

> Wells Fargo failed to pay property tax which caused my home to go to tax sale. Spent three months telling them they forgot to pay my property tax. Finally, they paid taxes late which cause the next year escrow account to double causing financial issues.

86. On information and belief, in the last year, the Consumer Financial Protection Bureau Complaint Database includes 390 consumer complaints that reference a Wells Fargo escrow account issue.

**COUNT I**
**Violations of the Real Estate Settlement Procedures Act**
**"RESPA" 12 U.S.C. § 2605, *et seq.***

87. The Lewises incorporate the above paragraphs as if fully stated in this Count.

88. Wells Fargo is a servicer of a federally related mortgage loan within the meaning of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605.

89. The terms of the mortgage loan agreement require the Lewises to make payments to an escrow account.

90. The Lewises owed real estate taxes that were to be paid out of the escrow account.

91. The Lewises made their required mortgage payments in a timely manner.

Electronically Filed - City of St. Louis - December 18, 2020 - 11:04 AM

92. The Lewises' escrow account contained a growing surplus, totaling over $6,000 by the end of 2019, and $6,234.90 by February 2020.

93. St. Louis City real estate taxes are assessed every two years (odd numbered years) and are due on an annual basis by December 31.

94. Tax payments received after the due date are charged a late penalty, interest, potential attorney fees and costs related to recording.

95. If the City of St. Louis has to proceed with the tax forfeiture process, the City incurs and imposes costs relating to the process.

96. RESPA requires that a servicer (such as Wells Fargo) "shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due." 12 U.S.C. § 2605(g).

97. Regulation X defines the phrase "in a timely manner" from 12 U.S.C. § 2605(g) to mean: "If the terms of any federally related mortgage loan require the borrower to make payments to an escrow account, the servicer must pay the disbursements in a timely manner, that is, **on or before the deadline to avoid a penalty**, as long as the borrower's payment is not more than 30 days overdue."12 C.F.R § 1024.17(k) (emphasis added).

98. The Lewises' 2017 annual tax payment was due by December 31, 2017.

99. Wells Fargo failed to make any real estate tax payments on behalf of the Lewises in 2017.

100. The Lewises' 2018 annual tax payment was due by December 31, 2018.

101. Wells Fargo failed to make any real estate tax payments on behalf of the Lewises in 2018.

102. The Lewises' 2019 annual tax payment was due by December 31, 2019.

Electronically Filed - City of St. Louis - December 18, 2020 - 11:04 AM

103. Wells Fargo failed to make any real estate tax payments on behalf of the Lewises in 2019.

104. Wells Fargo's failure to pay the tax assessment in a timely manner is a violation of 12 U.S.C. § 2605(g).

105. Lewis incurred actual damages due to Wells Fargo's failure to pay the real estate taxes on time. This includes, but is not limited to, interest, penalties, attorney's fees charged, and costs.

106. A servicer who fails to comply with any provision of 12 U.S.C. § 2605 is liable to the borrower for each such failure for actual damages and statutory damages up to $2,000.

107. Wells Fargo's pattern or practice of noncompliance also resulted in damages for emotional distress in an amount to be determined at trial.

108. As a result of a pattern or practice of noncompliance with RESPA due to the servicing problems by Wells Fargo, Wells Fargo is liable to the Lewises for actual damages, statutory damages pursuant to 12 U.S.C. § 2605(f)(1), and costs and attorneys' fees pursuant to 12 U.S.C. § 2605(f)(3) in an amount to be determined at trial.

WHEREFORE Plaintiffs Kiara Lewis and Kimberly Lewis request that the Court enter judgment against Defendant Wells Fargo, N.A. and Defendant Wells Fargo Home Mortgage, Inc. for an amount in excess of $25,000.00 for all actual damages, all available statutory damages, attorneys' fees, court costs, any applicable pre-judgment and post-judgment interest amounts, and all other relief that this Court deems just and proper.

**COUNT II**
**Breach of Contract**

109. The Lewises incorporate the above paragraphs as if fully stated in this Count.

Electronically Filed - City of St. Louis - December 18, 2020 - 11:04 AM

110. The mortgage and note are contracts. To purchase the home, the Lewises executed and delivered a promissory note to Wells Fargo. In exchange for Wells Fargo providing the purchase money, the Lewises granted Wells Fargo a mortgage on the property.

111. As the servicer of the mortgage, Wells Fargo is bound by all terms of the mortgage and note.

112. The mortgage required the Lewises to pay a portion of their monthly payment into an escrow account held by Wells Fargo so that Wells Fargo would disburse the monies to pay for "Escrow Items." The "Escrow Items" included taxes and assessments against the property.

113. The Lewises timely made their required monthly payments to Wells Fargo.

114. RESPA requires that a servicer "shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due." 12 U.S.C. § 2605(g).

115. Regulation X defines the phrase "in a timely manner" from 12 U.S.C. § 2605(g) to mean: "If the terms of any federally related mortgage loan require the borrower to make payments to an escrow account, the servicer must pay the disbursements in a timely manner, that is, **on or before the deadline to avoid a penalty**, as long as the borrower's payment is not more than 30 days overdue."12 C.F.R § 1024.17(k) (emphasis added).

116. Annual real estate tax payments were due to St. Louis City by December 31, 2017, December 31, 2018, and December 31, 2019.

117. Wells Fargo failed to make the payments on or before all of the deadlines.

118. As a result of Wells Fargo's breach of the agreement, the Lewises have suffered damages in the form of interest, penalties, attorneys' fees imposed, and costs as a result of Wells Fargo's failure to timely pay their real estate taxes.

Electronically Filed - City of St. Louis - December 18, 2020 - 11:04 AM

WHEREFORE Plaintiffs Kiara Lewis and Kimberly Lewis request that the Court enter judgment against Defendant Wells Fargo, N.A. and Defendant Wells Fargo Home Mortgage, Inc. in excess of $25,000.00 for all available damages, court costs, any applicable pre-judgment and post-judgment interest amounts, and all other relief that this Court deems just and proper.

**COUNT III**
**Declaratory Relief**

119. The Lewises incorporate the previous paragraphs as if fully stated in this Count.

120. A controversy exists between the parties concerning the distribution of the escrow accounts held in the Lewises account.

121. A controversy exists between the parties concerning whether Wells Fargo has maintained proper oversight of the Lewises' escrow account.

122. The Lewises have a legally protected pecuniary interest in the amounts being improperly held in the escrow account by Wells Fargo.

123. The question presented as to whether Wells Fargo is improperly holding the Lewises monies in escrow is ripe for judicial determination.

124. The question presented as to whether Wells Fargo has properly monitored the Lewises' account is ripe for judicial determination.

125. For the reasons set forth above, Wells Fargo is improperly holding excess funds in the Lewises escrow account which should be disbursed to the Lewises.

126. Missouri law gives the Court power to declare remedies including ordering an affirmative act by an adverse party.

127. The Lewises have no adequate remedy at law to recover the excess funds being held by Wells Fargo in the escrow account.

Electronically Filed - City of St. Louis - December 18, 2020 - 11:04 AM

128. The Lewises have no adequate remedy at law to require Wells Fargo to exercise proper oversight over the escrow account.

129. The Lewises seek an order from the Court requiring that Wells Fargo make appropriate corrections to their account. Specifically, the Court should order Wells Fargo disburse to the Lewises the amounts held in the escrow account.

130. The Lewises seek an order from the Court requiring Wells Fargo to require Wells Fargo to exercise proper oversight over the escrow account.

WHEREFORE Plaintiffs Kiara Lewis and Kimberly Lewis request that the Court enter judgment against Defendant Wells Fargo, N.A. and Defendant Wells Fargo Home Mortgage, Inc. in excess of $25,000.00 for all available damages, court costs, any applicable pre-judgment and post-judgment interest amounts, to award the declaratory relief requested in this Count, and all other relief that this Court deems just and proper.

**COUNT IV**
**Violations of The Missouri Merchandising Practices Act ("MMPA"), § 407.010 *et seq.***
**(only as to Wells Fargo Home Mortgage, Inc.)**

131. The Lewises incorporate the allegations of the previous paragraphs as if fully set forth in this Count.

132. The mortgage provided by Wells Fargo is "merchandise" as defined by §407.010(4), RSMo. 2016.

133. The Lewises entered into the mortgage agreement for personal purposes.

134. Wells Fargo represented to the Lewises that it would use the monies deposited into escrow to timely pay their annual real estate taxes, and it was legally obligated to do so.

135. Wells Fargo was obligated to monitor the amount of money in the Lewises' escrow account to ensure their annual real estate taxes were timely paid.

Electronically Filed - City of St. Louis - December 18, 2020 - 11:04 AM

136. The Lewises would not have entered into an agreement with Wells Fargo if they knew Wells Fargo did not intend to fulfill its obligation to pay their annual real estate taxes.

137. The Lewises acted as reasonable consumers as they timely paid their monthly mortgage to Wells Fargo and expected Wells Fargo to fulfill its obligation to pay their annual real estate taxes.

138. Wells Fargo's failure to use the monies deposited into the Lewises' escrow account to timely pay the Lewises' annual real estate taxes is a deceptive practice in violation of §407.020 *et seq.*, RSMo. 2020 and the regulations governing the MMPA.

139. Wells Fargo's failure to use the monies deposited into the Lewises' escrow account to timely pay the Lewises' annual real estate taxes is a misrepresentation, false promise, deceptive practice, and unfair practice in violation of §407.020 *et seq.*, RSMo. 2020 and the regulations governing the MMPA.

140. Wells Fargo's failure to monitor the amount of money held in the Lewises' escrow account is a deceptive practice in violation of §407.020 *et seq.*, RSMo. 2020 and the regulations governing the MMPA.

141. Wells Fargo's failure to monitor the amount of money held in the Lewises' escrow account is a misrepresentation, false promise, deceptive practice, and unfair practice in violation of §407.020 *et seq.*, RSMo. 2020 and the regulations governing the MMPA.

142. The Lewises are entitled to the recovery of actual damages and attorney's fees pursuant to §407.025.1, RSMo. 2020 caused by Wells Fargo's failure to pay their real estate taxes and/or to properly monitor the amount of money in their escrow account.

143. Wells Fargo's conduct of repeatedly failing to pay the Lewises' annual real estate taxes and then lying to the Lewises about why the real estate taxes were not paid was willful,

Electronically Filed - City of St. Louis - December 18, 2020 - 11:04 AM

wanton, and malicious and displayed a conscious disregard for the Lewises' rights, entitling the Lewises to an award of punitive damages pursuant to §407.025.1, RSMo. 2020.

144. The Lewises seek a punitive damage award against Wells Fargo of a fair and reasonable amount to be awarded by a jury.

WHEREFORE Plaintiffs Kiara Lewis and Kimberly Lewis request that the Court enter a total award of damages against enter judgment against Defendant Wells Fargo Home Mortgage, Inc. in excess of $25,000.00 for all actual damages, punitive damages, attorneys' fees, court costs, any applicable pre-judgment and post-judgment interest amounts, and all other relief that this Court deems just and proper.

**COUNT V**
**Negligence**

145. The Lewises incorporate the allegations of the previous paragraphs as if fully set forth in this Count.

146. Wells Fargo has extensive skill and knowledge about how to properly use monies deposited into escrow accounts to pay real estate taxes.

147. Wells Fargo held itself out as having superior knowledge about how to properly use monies in escrow accounts to pay real estate taxes by assuring the Lewises that they would use their escrow monies for this purpose.

148. Wells Fargo has extensive skill and knowledge about how to properly monitor escrow accounts to ensure the escrow monies are being used for their proper purpose, namely, to pay its customers' necessary real estate taxes.

149. Wells Fargo had a duty to the Lewises to use the escrow monies to pay their annual real estate taxes.

Electronically Filed - City of St. Louis - December 18, 2020 - 11:04 AM

150. Wells Fargo had a duty to the Lewises to properly monitor the Lewises' escrow account to ensure that the monies in the escrow account were being used to pay their annual real estate taxes.

151. Wells Fargo breached its duty to use the monies in the Lewises' escrow account to pay their annual real estate taxes.

152. Wells Fargo breached its duty to monitor the Lewises' escrow account to ensure the monies were being used to pay their annual real estate taxes.

153. Wells Fargo failed to pay the Lewises' real estate taxes for multiple years.

154. Wells Fargo failed to properly monitor the Lewises' escrow account for multiple years.

155. Wells Fargo's breach of its duties to the Lewises caused significant damage to the Lewises in that they were sued by the City of St. Louis and had to pay additional monies to avoid their home being sold in a tax sale.

156. Wells Fargo's conduct displaced a reckless indifference and a conscious disregard to the Lewises' rights.

157. Further highlighting Wells Fargo's reckless indifference and conscious disregard for the Lewises' rights, when confronted about its failure to timely pay the real estate taxes, Wells Fargo's representative lied to the Lewis and her Wells Fargo did not pay the taxes because Wells Fargo was contesting the amount of real estate taxes with the City of St. Louis.

158. The Lewises are entitled to punitive damages from Wells Fargo in excess of $50,000.00.

WHEREFORE Plaintiffs Kiara Lewis and Kimberly Lewis request that the Court enter judgment against Defendant Wells Fargo, N.A. and Defendant Wells Fargo Home Mortgage, Inc.

Electronically Filed - City of St. Louis - December 18, 2020 - 11:04 AM

in excess of $25,000.00 for all available damages, court costs, any applicable pre-judgment and post-judgment interest amounts, punitive damages, and all other relief that this Court deems just and proper.

**Jury Trial Demanded**

**BUTSCH ROBERTS & ASSOCIATES LLC**

By: /s/ Christopher E. Roberts
David T. Butsch #37539
Christopher E. Roberts #61895
231 S. Bemiston Ave., Suite 260
Clayton, MO 63015
Ph: (314) 863-5700
Fax: (314) 863-5711
dbutsch@butschroberts.com
croberts@butschroberts.com